UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JONATHAN THOMPSON, #676677,

                        Plaintiff,

             -against-

GOOD SAMARITAN HOSPITAL AND ITS EMPLOYEES
JOHN AND JANE DOES, SUFFOLK COUNTY POLICE
DEPARTMENT AND ITS EMPLOYEES [SIC] JOHN DOE,
SUFFOLK COUNTY MEDICAL EXAMINERS OFFICE AND
ITS EMPLOYEE JANE DOE, SUFFOLK COUNTY FAMILY
COURT AND ITS EMPLOYEES [SIC] JOHN DOE, SUFFOLK
COUNTY CHILD PROTECTIVE SERVICES AND ITS
EMPLOYEES JOHN AND JANE DOE, AMITYVILLE FIRE
DEPARTMENT EMERGENCY MEDICAL TECHNICIANS
AND ITS EMPLOYEES JOHN AND JANE DOE, JOSEPH A.
HANSHE, SUFFOLK COUNTY JUDGE BARBARA KAHN,
SUFFOLK COUNTY ADA RAPHAEL PEARL, ALL
DEFENDANTS NAMED HEREIN INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITIES,

                        Defendants.
-------------------------------------------------------------------------X

ORDER
14-CV-5564(JFB) (ARL)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   DEC 1 1 2014   ★

LONG ISLAND OFFICE

JOSEPH F. BIANCO, District Judge:

On September 15, 2014, incarcerated *pro se* plaintiff Jonathan Thompson ("plaintiff")

filed a civil rights complaint brought pursuant to 42 U.S.C. § 1983 ("Section 1983") together

with an application to proceed *in forma pauperis* and an application for the appointment of *pro*

*bono* counsel to represent him in this case. The complaint is against Good Samaritan Hospital

and its employees John and Jane Does, the Suffolk County Police Department and its employee

John Doe, the Suffolk County Medical Examiners Office and its employee Jane Doe, Suffolk

County Family Court and its employee John Doe, Suffolk County Child Protective Services and

its employees John and Jane Doe, the Amityville Fire Department Emergency Medical

Technicians and its employees John and Jane Doe, Joseph A. Hanshe, Suffolk County Judge

Barbara Kahn, and Suffolk County Assistant District Attorney Raphael Pearl (collectively,

"defendants"). However, at the time plaintiff filed his complaint, he did not file the required

Prisoner Litigation Authorization Form ("PLRA"). Accordingly, the Court sent plaintiff a Notice

of Deficiency that advised plaintiff to complete and return the enclosed PLRA in order to

proceed with his case. *See* Docket Entry No. 3. On September 29, 2014, plaintiff filed the

PLRA. Accordingly, the Court now considers plaintiff's submissions.

Upon review of the declaration accompanying plaintiff's application to proceed *in forma

pauperis*, the Court finds that plaintiff's financial status qualifies him to commence this action

without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's

application to proceed *in forma pauperis* is granted. However, for the reasons that follow, the

complaint is *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii); 1915A(b).

Given the dismissal, the application for the appointment of *pro bono* counsel is denied as moot.

## DISCUSSION

I.    The Complaint[1]

Plaintiff's thirty-nine page, handwritten complaint, with an additional 255 pages of

exhibits, seeks to challenge his arrest and prosecution for the January 16, 2013 murder of his

girlfriend's four-year-old son, Adonis Reed. Plaintiff was arrested on January 18, 2013, indicted

on January 24, 2013 and pled not guilty on January 26, 2013 to an indictment that charged

plaintiff with second degree murder of a person less than eleven years old in violation of N.Y.

Penal Law § 125.25(4). *See* https://iapps.courts.state.ny.us/webcrim (last visited on Nov. 5,

2014). However, on October 16, 2014, just prior to the commencement of the state court

criminal trial, plaintiff pled guilty to the indictment and was scheduled to be sentenced on

---

[1]The following facts are taken from plaintiff's complaint and are presumed to be true for
the purpose of this Memorandum and Order.

2

November 17, 2014.  (*Id.*)

The instant complaint was filed in this Court on September 15, 2014, approximately one month before plaintiff's guilty plea. The gravamen of the complaint is that plaintiff was framed by the police for the murder and that the child's death was really caused by the negligent care provided to the child by the responding EMTs and employees at Good Samaritan Hospital after the child was knocked down by their dog. (Compl. at ¶¶ 17-18, 21, *see also* Thompson Hearing Transcript, dated 7/10/14, annexed to the Compl. at 2, 6, 13-14, 21). According to plaintiff, the police lied and said that plaintiff admitted to punching the child in the stomach in order to cover up the fact that the lacerations to the child's liver and spleen were really caused by excessive CPR performed on the child by the EMTs. (Compl. at ¶¶ 17-18, 21). Plaintiff also suggests in the complaint that the bruises and marks on the child's body were caused by his older sibling and that Suffolk County CPS is responsible for the child's death because CPS "never helped" even though plaintiff told the caseworker that Adonis was being beaten up "everyday" by his older sibling. (Compl. at ¶¶ 19-20).

Plaintiff next challenges the temporary order of protection entered against plaintiff by the Suffolk County Family Court following his arrest, claiming that it is based on "false evidence that the cops gave them" and asserts that because the child's death was "caused by medical malpractice there shouldn't be no order of protection."  (Compl. at ¶ 20).  Plaintiff also alleges that the Suffolk County Medical Examiner's office failed to properly investigate the cause of death, and, if it had, it would demonstrate that "[Good Samaritan] Hospital is responsible." (Compl. at ¶ 21).

Plaintiff also challenges the conduct of Suffolk County Court Judge Barbara Kahn ("Judge Kahn"), Suffolk County Assistant District Attorney Raphael Pearl ("ADA Pearl") and

3

his court-appointed defense attorney Joseph Hanshe ("Hanshe"). More specifically, plaintiff claims that Judge Kahn is biased against him and has denied his request to substitute counsel. (Compl. at ¶ 22). Plaintiff claims that Hanshe's representation in the underlying criminal case "falls below an objective standard of reasonableness . . . ." (*Id.*) Plaintiff also complains that ADA Pearl, *inter alia*, is "holding back exculpatory evidence which would exonerate me if he brings it forward." (Compl. at ¶ 23). Finally, plaintiff alleges that:

> [his prosecution] is a clear conspiracy of Suffolk County officials violating my rights. Suffolk County Police Department, Suffolk County Child Protective Services, Good Samaritan Hospital, Suffolk County Medical Examiners Office, Amityville Fire Department Emergency Medical Technicians, Mr. Joseph A. Hanshe, Attorney at law, Suffolk County Judge Barbara Kahn and Suffolk County Assistant District Attorney Raphael Pearl have harmed me by violating its own legally required procedures and . . . have caused me to be falsely arrested for a crime that didn't happen and that I did not do. It has also kept me from seeing my first born child and fiancee. This injustice is a violation of my civil and constitutional rights.

(Compl. at ¶ 24). For relief, plaintiff seeks "an order declaring that the defendants have acted in violation of the United States Constitution, "injunctive and declaratory relief", and "$500 million dollars as compensatory damages." (Compl. at ¶¶ 25-27). Plaintiff also "prays this Court grant a stay stopping the officials and agencies from taking further action on my criminal case . . . and grant an order to vacate and drop all criminal charges against me." (Compl. at ¶¶ 26-27).

II.     Application to Proceed *In Forma Pauperis*

Upon review of plaintiff's declaration in support of the application to proceed *in forma pauperis*, the Court finds that plaintiff is qualified to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's request to proceed *in forma pauperis* is granted.

4

III.    Sufficiency of the Pleadings

    A.    Legal Standard

A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. *See id.*

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest.'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd,* 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a

5

defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

B.      Immunity

    1.      Prosecutorial Immunity

  "'It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under §1983.'" *Crews v. Cnty. of Nassau*, No. 06-CV-2610 (JFB)(WDW), 2007 WL 4591325, at *13 (E.D.N.Y. Dec. 27, 2007) (quoting *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005)). "Prosecutorial immunity from §1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) (internal quotations and citations omitted); *see also Shmueli*, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

  Given the absence of any allegations indicating that the conduct of which plaintiff

6

complains would fall outside the scope of prosecutorial immunity, plaintiff's claims against ADA Pearl are not plausible. *See, e.g., Hill*, 45 F.3d at 662 (finding that a failure to turn over Brady material falls within the type of prosecutorial functions that are entitled to absolute judicial immunity) (citing *Imbler v. Pachtman*, 424 U.S. 409, 416, 430 (1976)). Accordingly, plaintiff's claims against ADA Pearl are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(iii); 1915A(b)(2).

2.    Judicial Immunity

Judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The absolute judicial immunity of the court "is not overcome by allegations of bad faith or malice" or "because the action he took was in error . . . or in excess of his authority." *Id.*, 502 U.S. at 11, 13 (quotations and citations omitted). This immunity may be overcome only if a judge is alleged to have taken "nonjudicial actions" or if judicial actions were taken "in the complete absence of all jurisdiction." *Id.* at 11-12.

As is readily apparent, Judge Kahn is entitled to absolute judicial immunity. It is well settled that "[j]udges have traditionally enjoyed absolute immunity for damages arising out of judicial acts performed in their judicial capabilities." *Rios v. Third Precinct Bay Shore*, No. 08-CV-4641 (JFB)(ETB), 2009 WL 2601303, at *3 (E.D.N.Y. Aug. 20, 2009) (citing *Mireles*, 502 U.S. at 11-12). Plaintiff's only allegations against Judge Kahn are that she is biased against him and has denied his request to substitute counsel. Presiding over court proceedings, and issuing rulings relating thereto, are clearly judicial acts protected by absolute immunity. Even liberally construed, plaintiff alleges no acts performed by Judge Kahn that fall outside the scope of

7

absolute judicial immunity. Plaintiff's allegations, if true, do not establish that Judge Kahn took nonjudicial actions or that she acted in the complete absence of jurisdiction.

Moreover, even though plaintiff seeks injunctive relief in addition to damages, he has no cause of action against Judge Kahn under the express terms of Section 1983 because he has not made any allegation that a declaratory decree was violated or that declaratory relief was unavailable. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."); *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (claim for injunctive relief barred against judicial officer under § 1983, where plaintiff did not allege violation of declaratory decree nor unavailability of declaratory relief). Accordingly, plaintiff's claims against Judge Kahn are barred by judicial immunity and are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(iii); 1915A(b)(2). *See, e.g., Montero*, 171 F.3d at 760 (affirming *sua sponte* dismissal of complaint against an official acting in a judicial capacity explaining that "[a] complaint will be dismissed as 'frivolous' when it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

C.     Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured.

8

42 U.S.C. § 1983; *accord Rehberg v. Paulk*, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed.

2d 593 (2012). "In order to state a claim under § 1983, a plaintiff must allege (1) that the

conduct complained of was committed by a person acting under color of state law, and (2) that

such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution

or laws of the United States." *Dwyer v. Regan*, 777 F.2d 825, 828 (2d Cir. 1985); *see also Rae v.

Cnty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d

51, 53 (2d Cir. 1999)).  Here, plaintiff's complaint is liberally construed to allege claims for

false arrest and malicious prosecution under the Fourth and Fourteenth Amendments.

    1. False Arrest and Malicious Prosecution Claims

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the

Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially

the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*,

316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false

arrest); *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious

prosecution)).  Under New York law, the elements of a false arrest claim are: (1) the defendant

intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged. *Weyant*, 101 F.3d at 853.  To succeed on a malicious prosecution claim under §

1983, a plaintiff must show (1) that the defendant commenced or continued a criminal

proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that

there was no probable cause for the proceeding; and (4) that the proceeding was instituted with

malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F.

Supp. 2d 667, 677 (S.D.N.Y. 2007).

9

Here, plaintiff claims he was falsely arrested, wrongfully charged and maliciously prosecuted for the murder of Adonis Reed. However, plaintiff pleaded guilty to the murder charge on October 16, 2014.[2]  *See* https://iapps.courts.state.ny.us/ webcrim (last visited on Nov. 5, 2014). Thus, plaintiff's malicious prosecution claim is not plausible since he has not - - and cannot in light of his guilty plea - - plead a favorable termination of the underlying criminal charge. *See, e.g., Singleton v. City of New York*, 632 F.2d 185, 195 ("The common law rule that termination of the earlier proceedings in favor of the accused is an essential element of a malicious prosecution claim has generally been adopted and applied by federal courts" in actions under § 1983). Moreover, plaintiff's conviction demonstrates that there was probable cause to arrest plaintiff thus rendering his false arrest claim implausible. *See Cameron v. Fogarty*, 806 F.2d 380, 388 (2d Cir. 1986) ("Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest."). Accordingly, plaintiff's Section 1983 claims are not plausible and are thus dismissed with prejudice for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b)(1).[3]

---

[2] The Court may take judicial notice of the fact that plaintiff pleaded guilty to murder in the second degree. *See, e.g., Davis v. Cotov*, 214 F. Supp. 2d 310, 315-16 (E.D.N.Y. 2002) (taking judicial notice of fact that plaintiff was found guilty of violating parole because fact was not subject to reasonable dispute, and appeal decision notice was public document) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (holding that a court may consider actions and filings in related proceedings "'to establish the fact of such litigation and related filings'" (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

[3] Moreover, insofar as plaintiff seeks an order in this Court "vacat[ing] and drop[ping] all criminal charges against me," such relief is unavailable in a civil suit brought pursuant to Section 1983. A petition filed pursuant to the  habeas corpus statute, 28 U.S.C. § 2254, is the exclusive avenue by which a convicted state court prisoner may challenge the constitutionality of his

IV.     Leave to Amend

In light of the pleading deficiencies set forth above, the Court has considered whether plaintiff should be given an opportunity to re-plead. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). The Second Circuit has emphasized that a "court should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); *see also Chappius*, 618 F.3d at 170. Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Here, the deficiencies in plaintiff's claims are substantive in nature and, as such, cannot be remedied by amendment. Apart from the fact that plaintiff cannot allege a *prima facie* case of false arrest or malicious prosecution in light of his recent state court conviction, amendment is futile because the claims that plaintiff seeks to pursue here call into question the validity of his conviction and are thus barred from review in a civil proceeding brought pursuant to Section 1983. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[W]hen a state prisoner seeks

---

conviction. Plaintiff is cautioned that Section 2254 contains certain requirements, including time limits to file such a petition and a requirement that the claims be first exhausted in state court. *See* 28 U.S.C. § 2254.

damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480-90). Thus, pursuant to *Heck*, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Thompson v. Grey*, 385 F. App'x 54, 55 (2d Cir. 2010) (affirming dismissal of plaintiff's § 1983 claims of false arrest and malicious prosecution under *Heck*); *Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999) (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo*, No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)); *Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*).

Therefore, because the false arrest and malicious prosecution claims challenge the validity of plaintiff's conviction, which has not been reversed, expunged, or declared invalid,

12

they would be barred by *Heck*.[4]  *Heck*, 512 U.S. at 486-87.   Thus, amendment would be futile and leave to amend is accordingly denied.

CONCLUSION

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted and his complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii); 1915A(b).  Given the dismissal of the complaint, plaintiff's application for the appointment of *pro bono* counsel to represent him in this case is denied as moot.   The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Dated:          December 11 , 2014                           Joseph F. Bianco
                Central Islip, New York                      United States District Judge

---

[4] The Second Circuit's recent *en banc* decision in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) has no impact on this case.  There, the *en banc* Second Circuit panel held that the plaintiff's plea did not preclude him from seeking damages from those he accused of violating his right to a fair trial, emphasizing that "[n]ot every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination." *Id.* at 132.  Unlike *Poventud*, plaintiff's complaint is based on his belief that he was wrongly arrested and maliciously prosecuted for a crime he claims here that he did not commit.  However, subsequent to the filing of the instant complaint, plaintiff pled guilty to the charge he challenges here.  Thus, *Heck's* core concern of finality would be undercut if plaintiff succeeds on the merits here.  Therefore, his claims are *Heck*-barred and do not fall within the *Poventud* exception.

13